IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JASMINE C. SMITH, *for JTH*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. 1:07cv890 -WC |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

Jasmine C. Smith (Smith) applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (2000), on behalf of her daughter, J. T. H. (the claimant), alleging she was disabled. Smith's application was denied at the initial administrative level. Smith then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (the Commissioner).[1] See Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review pursuant to 42 U.S.C. § 405(g). Pursuant to 28

---

[1]Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #13); Def.'s Consent to Jurisdiction (Doc. #12). Based on the Court's review of the record and the briefs of the parties, the Court REVERSES AND REMANDS the Commissioner's decision.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 1382c(a)(3)(C)(i), a person under the age of 18 is disabled (and hence entitled to disability benefits) if the person "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[2] In determining whether a child is disabled, the Commissioner employs the following sequential evaluation process. See 20 C.F.R. § 416.924 (2007).

> (1) Is the person presently not engaged in substantial gainful activity?
>
> (2) Is the person's impairment severe?
>
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of Impairments"), and also meet the twelve-month duration requirement?[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] Part A of the Listing of Impairments applies to children and adults; Part B applies to children only. In dealing with a child's case, the Commissioner looks first to Part B, then to Part A. 20 C.F.R. § 416.925(b); Wilkinson v. Bowen, 847 F.2d 660, 661 (11th

If the answer to each of the three questions is "yes," then the child is entitled to benefits.

The standard of review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead, must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. Hillsman v. Bowen, 804 F.2d 1179 (11th Cir. 1986).

> [The Court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  DISCUSSION

#### A.  *Introduction*

The claimant was approximately three-years old at the time of the hearing before

---

Cir. 1987).

the ALJ. Tr. at 242. Following the administrative hearing, the ALJ found the claimant had not engaged in substantial gainful activity at any time during the period under adjudication (Step 1). The ALJ also found the claimant had two severe impairments under Step 2: asthma and otitis media. Tr. at 18. Nonetheless, the ALJ concluded these impairments, while severe, did not meet or medically or functionally equal[4] in severity the criteria for any impairment in the Listing of Impairments, and the claimant did not have an "extreme" limitation in any areas of functioning or "marked" limitation in two areas of functioning. Consequently, the ALJ found the claimant was not disabled. Id. at 18, 21.

---

[4]Functional equivalency means that the impairment is of "listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). A marked limitation is one that interferes seriously with the child's "ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(2)(i). "It is the equivalent of the functioning [the Secretary] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." Id. The regulations state:

> If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

Id. § 416.926a(e)(2)(iii). An "extreme limitation" is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(3)(i). It can be shown by a valid score on a standardized test that is three or more standard deviations below the mean. Id.

### B.    *Smith's Claims*

Smith presents three issues for review: (1) whether the ALJ erred in failing to conclude the claimant's upper respiratory infections constituted a "severe" impairment; (2) whether substantial evidence supports the ALJ's decision at Step 2 that the claimant did not meet or equal any Listing of Impairments and, in particular, Listing § 103.03C; and (3) whether the ALJ's credibility determination comports with the law. See Pl.'s Mem. Law in Supp. of Plf.'s Arg. (Doc. #11) at 12 (Pl.'s Br.). The Commissioner claims the ALJ made proper determinations supported by evidence on the record as a whole. See Def.'s Mem. Supp. Commr's Decision (Doc. #16) at 11-16 (Def.'s Br.).

### C.    *Analysis*

#### 1.    *Severe impairment*

To support the first argument, Smith claims the "plethora of symptoms imposed by" the claimant's recurrent upper respiratory infection "serve[ ] as *prima facie* evidence" the impairment significantly impacted the claimant's ability to function. These symptoms include: nasal congestion, coughing spells, fussiness/irritability, runny nose, and decreased appetite. Pl.'s Br. (Doc. #11) at 12. The Commissioner properly points out Smith did not allege disability because of this impairment in her application or at the administrative hearing. In other words, the Commissioner seems to argue Smith waived her right to raise this argument by not presenting it to the ALJ, the final decisionmaker in this case. See Def.'s Br. (Doc. #16) at 11.

Precedent in this Circuit mandates a finding that Smith has waived her right to raise this argument before the Court. In Alacare Home Health Servs., Inc. v. Sullivan, a Medicare benefits case, the Eleventh Circuit pronounced that "an argument not raised in an administrative hearing cannot be raised on appeal." Alacare Home Health Servs., Inc. v. Sullivan, 891 F.2d 850, 855 n.5 (11th Cir. 1990) (citing United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 35-36 (1952); Beale v. Blount, 461 F.2d 1133, 1140 (5th Cir. 1972)); see also Chipman v. Shalala, 90 F.3d 421, 423 (10th Cir. 1996) (holding, in a dispute over Medicare insurance coverage, that the plaintiff waived arguments that he did not present before the ALJ or the Appeals Council); Pleasant Valley Hosp., Inc. v. Shalala, 32 F.3d 67, 70 (4th Cir. 1994) (holding, in a Medicare reimbursement dispute, that it is inappropriate to consider arguments not raised during the administrative process); Dir., Office of Workers' Comp. Programs v. N. Am. Coal Corp., 626 F.2d 1137, 1143 (3d Cir. 1980) ("[A] court should not consider an argument which has not been raised in the agency proceedings which preceded the appeal, absent unusual circumstances."); Bechtold v. Massanari, 152 F. Supp. 2d 1340, 1347 (M.D. Fla. 2001) (finding, in a social security case, claimant waived her argument by failing to raise it before the ALJ); Mills v. Apfel, 84 F. Supp. 2d 146, 150 (D. Me. 2000) (same), aff'd, 244 F.3d 1 (1st Cir. 2001). Even though the Eleventh Circuit has not addressed the issue of waiver in the specific context of a social security appeal, there is no indication the Eleventh Circuit would conclude, under the circumstances of the instant case, that Smith

had not waived this argument.  See Bechtold v. Massanari, 152 F. Supp. 2d at 1347.

Moreover, the application of this principle is fair here.  Smith did not list upper recurrent respiratory infection as a disabling condition or illness in her application, nor did she mention this impairment when asked by the ALJ about the problems Smith's daughter experienced.  Tr. at 54 (listing asthma), 72 (stating no new illnesses, injuries, or conditions since last disability report), 243 (asking "[w]hat are the problems your child is having?").  Smith also did not set forth this argument expressly before the Appeals Council.  Tr. at 238A-238C.  Though the Court notes Smith stated in her appeal brief she did not present an exhaustive list of errors in the ALJ's decision, Smith specifically requested additional time after receiving the hearing transcript to present further legal arguments.  Tr. at 238B.  The record does not contain any additional appellate arguments.  Given that, at step two of the inquiry, the burden of proof is on claimant to prove an impairment is severe and more than a mere, slight abnormality, and Smith plainly had the opportunity on at least two occasions to claim recurrent upper respiratory infection as a disabling condition, the Court finds her failure constitutes a waiver of her right to raise the argument before this Court.  See Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1987); Bechtold, 152 F. Supp. 2d at 1347.

### 2.    *Listing 103.03*

Turning to Smith's second argument, she challenges the ALJ's decision that the claimant did not meet or equal any Listing of Impairments as unsupported by the record.

Specifically, Smith argues the record shows the claimant's asthmatic condition required multiple hospitalizations and corticosteroids. Pl.'s Br. (Doc. #11) at 13-14. Although the Commissioner concedes the claimant occasionally received prescriptions to treat her asthma, the Commissioner argues there is no evidence beyond the discredited opinion of the claimant's treating physician that the claimant's asthma met or equaled Listing 103.03C. See Def.'s Br. (Doc. #16) at 12-13.

The ALJ's discussion of this issue consists of one sentence, which does not address any specific listing, but rather generally concludes the claimant did not meet or equal any Listing.

> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 . . . .

Tr. at 16. In light of the generality of the ALJ's decision, it necessarily follows that the ALJ considered Listing § 103.03C in rendering his decision.[5]

Section 103.03C of the Listing of Impairments provides, in relevant part, as follows:

> Persistent low-grade wheezing between acute attacks or absence of extended symptoms-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:

---

[5] Thus, the Court need not address Smith's argument that "the ALJ's decision fails to specifically reference any of the Commissioner's listings, including Listing 103.03." Pl.'s Br. (Doc. #11) at 13.

      1. Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or

      2. Short courses of corticosteriods that average more than 5 days per month for at least 3 months during a 12-month period.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 103.03C.

The record reveals the claimant did not suffer from persistent low-grade wheezing, as wheezing was noted only five times over a three-year treatment period. Tr. at 122, 145, 147, 160, 192.[6] The record also lacks evidence of "radiographic or other appropriate imaging techniques evidenc[ing] . . . pulmonary hyperinflation or peribronchial disease." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 103.03C. The only radiographic evidence in the record indicates the claimant's chest x-rays were normal and her lung's were clear. Tr. at 92, 97, 108. In the absence of persistent low grade wheezing and prolonged expiration with radiographic or other appropriate imaging techniques evidencing pulmonary hyperinflation or peribronchial disease, the listing demands the evidence of an absence of extended symptom free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators <u>with</u> the use of short course corticosteriods that average <u>more than five days per month for at least three months during a twelve month period</u>. 20 C.F.R. Pt. 404,

---

[6]The Court observes, however, wheezing was predominantly noted during the months of May, October, November, and December in 2005. As discussed <u>infra</u>, there is some evidence suggesting the claimant may have met or equaled Listing § 103.03 during the months of October through December 2005. On remand, the Commissioner will have the opportunity to revisit this evidence as well.

Subpt. P, App. 1 § 103.03C (emphasis added).

The record reveals the claimant was prescribed or used a corticosteroid, Pulmicort. See Physicians' Desk Reference at 212 (2007); tr. at 116, 118, 124, 144 (covering October 2005 through December 2005). The record also reveals the claimant was prescribed and/or received bronchodilators. Xopenex and Albuterol are bronchodilators. See Physicians' Desk Reference at 102, 213. The medical evidence shows the claimant received prescriptions for or Smith reported the claimant taking either Xopenex or Albuterol as follows:[7] May 15, 2005 (covering May 13-15 when claimant received Xopenex and directing Smith to continue on Albuterol), May 20, 2005 (Albuterol), August 9, 2005 (Albuterol), September 1, 2005 (Albuterol), October 31, 2005 (Albuterol with Pulmicort), November 1, 2005 (Albuterol), November 30, 2005 (noting Albuterol with Pulmicort), December 5, 2005 (recommending Albuterol and Pulmicort), December 17, 2005 (Albuterol with Pulmicort), February 20, 2007 (Albuterol), and March 29, 2007 (Xopenex with Pulmicort). Tr. at 92-93, 116, 118, 124, 144-45, 147, 154, 156-57, 228, 237-38; see also tr. at 56 (stating the claimant used Albuterol to control asthma), 78, 80-82 (stating Dr. Veena Rajashekhar, M.D., changed the claimant's medication from Albuterol to Xopenex with Pulmicort).[8] It is obvious from these records the claimant

---

[7]Consistent with the ALJ's decision the undersigned has considered the complete medical history on the record. Tr. at 15.

[8]Indeed, the record reveals Smith testified at the hearing to the claimant's use of breathing treatments (Albuterol and Xopenex) at home and in the doctor's office, and the ALJ noted this testimony in his decision. Tr. at 18, 243-44.

received prescriptions for and/or used a bronchodilator as well as corticosteroids for some time in October 2005, November 2005, and December 2005, a three-month period during a twelve-month period.

Those records, however, do not indicate the frequency in which the claimant took both the bronchodilator and the corticosteroid during the months of October through December 2005. The Court has found only one place in the record providing some insight on the issue. Tr. at 147 (indicating the claimant took Albuterol every 4-6 hours).[9] Because this information is relevant to whether the claimant meets or equals Listing § 103.03C, the ALJ had a duty to "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" McCloud v. Barnhart, 166 F. App'x. at 417 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)); Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) ("It is well-established that the ALJ has a basic duty to develop a full and fair record."). In light of the ALJ's failure to do so here, the Court cannot conclude his decision is supported by substantial evidence and must reverse and remand that determination for further consideration consistent with this opinion.[10]

---

[9]The Court notes Smith testified the claimant receives a bronchodilator treatment in the day and night time. Tr. at 247; see also tr. at 250-51. While the ALJ discredited some of Smith's testimony, the ALJ did not discredit Smith's statements concerning the frequency in which the claimant received medication. Tr. at 21 ("[T]he undersigned finds . . . the statements concerning the intensity, persistence, and limiting effects of the claimant's symptoms are not entirely credible.").

[10]In light of this finding, the Court need not reach Smith's third contention.

11

**IV.     CONCLUSION**

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is REVERSED and the case REMANDED for further proceedings consistent with this opinion.  A separate order will issue.

DONE this 24th day of June, 2008.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE